Thank you. Good morning. May it please the court. My name is William Janago, and I represent the appellant Harold Hall. I'd like to reserve two minutes for rebuttal. The trial court's in limine ruling is not a final determination for purposes of issue preclusion because under California law, an unqualified reversal of a judgment puts the parties back in the position as if the trial had never occurred. And all of the issues that were raised before are subject to relitigation. Therefore, because that ruling would not be preclusive or have any binding effect in the case in which it was issued, it can have preclusive effect in some other manner. Second of all, even if it were to satisfy the requirements for a final determination, there's another hurdle you have to overcome here, and that is under California law, issue preclusion is only applied where it comports with fairness and sound public policy. And to apply it here, even assuming that it meant the technical requirements, would not comport with fairness or with sound public policy. I'd like to begin with the first requirement, which is that is this a final determination? All of the cases that we've cited, People v. Berrigan, People v. Cooper, Witkins, and Authority of the State of California law, say that when there's an unqualified reversal, which is what we have here by the grant of habeas because that was People v. Cooper, which says that that's equivalent to an unqualified reversal. Well, you're using the word reversal fairly broadly. There are other cases in California that say that it is final when there is no right to challenge it on appeal. And this ruling was not successfully challenged on appeal. It was on the later habeas that it was challenged. So those cases cause me some concern. But Judge Ebel, I think there's really two categories of cases, and those two categories are cases where there's an absence of a final judgment on the claims, and then there are the other cases where there is an unqualified vacating of the judgment, if you will, in the But this is a very frustrating case because there's California case law, quite persuasive California case law on both sides, in my opinion. But I don't know how to get around that statement that it is final if it is not. The California case, they say, is final if it's not reversible on direct appeal. Judge Ebel, I'd first say that I think that there are cases that you can look at for both sides here, and they have the burden on issue preclusion. I would think that that means that we prevail on that. Well, if it were a factual question, that would cover it. But to me, it's a legal question, so it's not really a burden on me if it's a legal question. the Sandoval factors and whether it's a final judgment for purposes of issue preclusion, if it's subject to relitigation. Well, Sandoval makes it pretty clear, it seems to me, that there are different kinds of finality for different purposes, which is an interesting concept, but it does suggest that finality for issue preclusion is easier to come by than finality for some other purposes. And that's the thing that troubles me, too, about your argument, because there was nothing tentative about this ruling, and Sandoval sort of talks about things that are tentative and subject to rethinking during the course of a proceeding and so forth, and that's not your case. I find it somewhat interesting that our own court actually looked at this question, and it was later held that its looking at this question was not itself issue preclusive, but our court looked at this, too, and there's a footnote that says, we've looked at this, and it's without merit. I mean, a lot of courts have looked at this question, and I know that we're not looking at that footnote as preclusive, because our later case says that it wasn't. But where is the tentativeness that would allow this to come up again? I think that as a matter of California law, Judge Graber, people versus Boyer and people versus Canfa, which are both cases we cite in our brief, it says that an in limine determination is tentative by its very essence. But it goes on to define tentative as tentative until there is a final judgment that is not challengeable on appeal. Correct, Judge Ebel. And then you get to the question, which is really the issue in this case, is what happens when that ruling, admittedly it becomes final on direct appeal. We all agree with that. Then there is a subsequent ruling that is an unqualified vacating of the judgment. But not on this ground. Pardon? Not on this ground. But, Judge Graber, if you look at people versus Anderson, which is cited in the defendant's brief, it's 169 Calab 4th, 321. But again, it's cited in the briefs. That is the case where there is a criminal conviction. There is an issue about the admissibility of the confession. And there's an instructional error. They reverse on the instructional error. And so the case gets sent back to the trial court. And what they say in that case was the defendant was entitled to raise her constitutional claim again on retrial. So it's the reversal, the unqualified reversal of the judgment that puts you back in the original position. But the instructional error goes to the outcome. I mean, what was in that case, and I haven't read that case, but was the instructional error part of the reason for the reversal? The instructional error was the reason for the reversal. The confession had nothing to do with the instructional error. No, but it seems to me that that is what Judge Graber is asking about. Nowhere do we have any court that has said that this ruling in limine was wrong. Judge Ebel, I think that what you had was the original determination. And every court has reviewed that after that. But under California law, the question is whether or not this is subject to relitigation. That's really what the issue is here. Subject to relitigation in a criminal proceeding, we don't have a criminal proceeding here. We have a civil proceeding. That's because it was dismissed. But my point is that under California law, if it's subject to relitigation in the case that it was issued, in which it was issued, so that if Mr. Hall had another trial, he would be able to relitigate that issue, then by definition, it can't be final in another matter. And I think that if you look at the two categories of cases, you'll see that there's the absence of a judgment, and then there's the unqualified reversal. And in the unqualified reversal, if you look at Madsen, if you look at Berrigan, and if you look at Anderson, you get to relitigate that issue. And that's just the rules of collateral of issue preclusion under California law. Just real quickly, a citation. Do you have a case where there was an unqualified reversal of a conviction, and in a civil subsequent case, the court said that you're not bound by collateral estoppel on rulings that were not the basis for the reversal? If you had such a case, I assume it would have been featured in your brief. We don't have one exactly like that. But you have grain dealers versus mutual insurance, which is where there is the same situation as here, where you have an order that is determined to be final on the direct appeal because it's confirmed, the conviction is affirmed. Then there's a later grant of a habeas by, in fact, the federal court. And what that unqualified vacating of the judgment does is it obliterates the judgment and it puts the parties back to where they were at the beginning. And that's what, in fact, happened in grain dealers. It's a California court of appeal case which said that. Well, it almost was similar, except that what was missing there and present here is a hotly contested hearing over the very issue that you want to raise and an interlocutory, if you will, order after that hearing, denying the merits of the claim. And that seems to me factually, at least, to distinguish your case from grain dealers. I think it does distinguish it, but I don't think that fundamentally it changed the outcome because in California. Well, you have an explicit ruling here. There was a hearing. There was a reasoned decision. It was a litigated issue. And I don't know why that wouldn't make a difference given the Sandoval description of the sort of sliding scale of finality. Because under Sandoval, one of the requirements, and again, our position is you don't get to that because that's an absence of a judgment as opposed to unqualified reversal. But if you get to that second category of cases where there is an absence of a judgment, the first requirement is that the nature of the ruling itself is the last word of the rendering court, that nothing else is left to be done to end the litigation. And we don't have that here. That, by definition, is missing here. There is no last word of the rendering court. If you look at Sandoval, it's the jury verdict. If you look at Border Business Park, it's the sustaining of the demur, which is the last word of the rendering court. If you look at Howey, it's the finding that the evidence was insufficient to prove the prior condition. That's the last word of the rendering court. Well, the last word of the rendering court on this issue was a ruling flat out against you that was a reasoned decision. The trial court in the very beginning of the criminal case said that this claim of involuntariness was without merit. Yes, Judge Graber, but the question is whether you look at that as a temporal consideration or whether you look at it as a substantive consideration, is the way that I would describe it. And if you look at it as substantive, which I think is the way that Sandoval looks at it in the California cases, it has to be the nature of the ruling that is the last word of the rendering court. It has to be something that is sufficiently significant that it terminates litigation. Otherwise, you would have situations with in limine rulings where they would be... Well, but the way you're looking at it, you could have a tort claim and a contract claim, and one of them there's a ruling against you and you litigate the rest. And in the way you're reasoning it, it would be irrelevant that that case, that that claim was taken away. And that can't be right either. I think that in that circumstance, if there was an unqualified vacating or reversal of the judgment under California law, you go back to the position you were in before, even under the penal code that says. I'd like to turn my attention to the second report. One other detail. Yes. The language that turned the California decision into a nullity, I'm sympathetic to your argument that even though direct appeal may be over, some collateral review of the case may result in an entire vacating of the judgment, turning it into a nullity and eliminating all of its collateral effects. I suppose the most extreme case might be a subsequent decision by some collateral reviewing court that the court that made that original judgment had no jurisdiction over the person or the subject matter. So the decisions that were final, say, in the state court, final on appeal, might be rendered a total nullity because it had no jurisdiction whatsoever. In this case, I know you've got language that says, grant the writ and either free the man or give him a new trial. But I don't know if you have any language vacating the judgment in its entirety. Show me where it is. There are so many cases I could have forgotten it. That was actually an order that was issued by the Federal District Court, and it's a footnote in our brief where we cite the district court record, I believe. That must be why I missed it. I was looking at our appellate decisions, and I couldn't find that language. It was done on the remand from the Ninth Circuit decision. The Federal District Court issued an order. So our decision, the critical one here, has that footnote in it saying that the claim that the confession was coerced and involuntary and he was denied his Miranda rights, we examined it and found that these claims were without merit. And then our outcome was we reversed the judgment of the district court with instructions that it should issue an unconditional writ of habeas corpus unless the state court grants Hall a new trial. Correct. And then what happened on remand, if you look at footnote six in our opening brief on page 18, the district court says the judgment of conviction is vacated. Two other things before I sit down. One is that the issue in the prior Ninth Circuit appeal and the habeas appeal was not a de novo review. It was whether or not the state court's determination of denying Mr. Hall an evidentiary hearing was objectively unreasonable. So it didn't pass on the confession itself. The final point I want to make before I sit down is that even if you say that it meets the technical requirements, California law is very different than other places because it says Wait a minute, back up a minute. You're saying that footnote that I read in the Ninth Circuit case is dicta. Not only is it, I think that it, well, let me back up. The issue that was raised in that appeal, I mean I did the appeal so I know, it was whether or not the denial of an evidentiary hearing in federal court to review the state court decision was objectively unreasonable. So it wasn't at the merits of that. But then in any event it got vacated by the district court. You said it was or was not at the merits. I couldn't hear you. It's a. You just said. I think that it's dicta because it wasn't necessary to the decision and that's what the first civil appeal was about. The court said that that was not necessary to our decision and therefore it doesn't have any preclusive effect. And so that's already been decided. That is law of the case. One other point I want to get to and that is even if you accept the proposition that all the technical requirements are met here, you then get to the second requirement of California law, which is that the application of the doctrine comport with fairness and sound public policy. And surely in a case where the question is the voluntariness of the confession. Not so surely. Everybody involved in these various snitches is such a total and extreme liar that there's no way we can have any idea what the truth is or who's guilty or what they're guilty of. My point, Judge Kleinfeld, is not. I'm not trying to predict. I'm not trying to say you have to. It's not just your guy making things up, but everybody making things up. Well, I think that what happened was that Mr. Hall was coerced into providing his signature, but be that as it may, my point is that Judge Williams, who was the trial judge here, made a decision without knowing that the snitches were lying, without knowing that the facts didn't match the confession, without knowing about the DNA evidence, and without knowing all that information. That is not a fair proceeding. Was the snitch, was the falsity of the snitch statement, was that in existence at the time of this ruling? Not at the time of the 402 ruling. Absolutely not. So of course he wouldn't have known about it. And that's my point. And that's why California law says it's not to be rigidly applied. Just because it happened before, there has to be an opportunity for reexamination. Why is it unfair? I mean, the whole thing starts with Hall snitching out somebody for a crime he couldn't have committed because he was in jail. Then somebody else snitches out Hall, and Hall gives a confession, and the confession is plainly a false confession. He's got a back room in a beauty parlor that has no back room, that sort of thing. You're just in Never Never Land once you get into it. Perhaps so, Judge Kleinfeld. But my point is that Judge Williams, the trial judge, didn't know any of that when he made the voluntariness determination. And because he didn't know that, we know that now, and you can look back at it. Well, voluntariness and falsity are two very different things. You can voluntarily tell people things that are absolutely false. And falsity is a different question. And I agree with that. My point, however, is that if you're going to be making a decision as a finder of fact, you should have as much information as you can available to you. And Judge Williams, when he made this ruling prior to trial, did not have any of that evidence, so it would not warrant this. And the other point that I would make, and I'm going to sit down, is that it would be very bad public policy because it would mean that they get to dismiss his criminal case so he doesn't get a retrial, and then they block his civil case. That can't be fair. If they had retried him, he would have had it. Would you prefer that your client now be retried criminally? I objected to the client. Would you have preferred that? Does the record reflect whether your client would now prefer to be criminally tried? The record reflects that we objected to the dismissal without prejudice. We said retry him or dismiss with prejudice. I'd be happy to try this case. Well, what is your client's view? Well, we just deal with the record. I bet your client doesn't have anything on the record about whether he's asking to be retried or not. Only the statement that we objected to being without prejudice. Thank you, counsel. You exceeded your time by quite a lot. So we'll hear now from the government. Good morning, Your Honors. Lisa Berger, Deputy City Attorney for Appalese. I think the court has touched on a lot of the arguments that ---- Something there. Your argument in its full glory, it strikes me, has to be mistaken. Here's what I mean. To say that once a state court decision has become final through direct appeal, race judicata effect through issue preclusion or claim preclusion, one kind of race judicata or another, remains, regardless of what happens collaterally, cannot be right. And my hypothesis is the state court decision that was made in the total absence of jurisdiction, either over the person or over the subject matter, if a federal court subsequently decides that that was so, such as the U.S. Supreme Court, that's happened with California a fair amount recently, such as on these extraterritorial decisions, it seems to me that your adversary would have to be right under grain dealers, that the decision is obliterated and nothing in it has any force whatsoever because it was rendered without jurisdiction. Now, where is the line between that type of decision, which really is obliterated, under grain dealers, and this decision, or type of decision, where you claim some things are still binding and final? I think what we learned from the restatement is that there is no absolute bright light. There is no necessarily everything is wiped out. Clearly in a situation where a higher court, a Supreme Court. Sometimes it's all wiped out and sometimes not. Correct. We know the difference. Where it's jurisdictional, I don't think that would be an issue. That is, you agree with Judge Kleinfeld on that one, that when it's jurisdictional, wipes out everything. I would agree with that. So if the reversal here had been predicated on lack of jurisdiction, we probably wouldn't be here today. Correct. Now, I think the distinction with grain dealers is that in grain dealer, the habeas reversal of the criminal, underlying criminal conviction was on specifically the issue that was at the heart of the civil case. And that had to do with whether or not insurance covered a intentional act, whether the criminal defendant had been acting in self-defense. So the court looking at grain dealers said that in that circumstance, the habeas obliterated the criminal judgment. And I think obliterated was a poor choice of words. I don't know if it was. That's what this Court will be deciding. I mean, they chose the word and they may have meant to choose a very broad word. The distinction that we have here is that not only did the habeas not reverse the judgment based on the claim of a coerced confession, but this Court specifically said that it found no merit. Now, counsel has pointed out that the issue before the Court at that time was whether or not there should have been an evidentiary hearing on the coerced. And our subsequent case specifically said that that footnote itself could not be claim preclusive. And the city is not arguing that it is claim preclusion or anything else. All the city is pointing out is that to the extent that this Court looked at the issue of the coercion of the confession, it found no merit. And in finding the most. At most, that's just dictum. Yes. Yeah. But it highlights the fact that in reversing on the other issue. It reversed on a completely different ground, which is what you're saying. Yes. Grain dealers is distinguishable in that way and also in the way that I was discussing with opposing counsel. That's correct, Your Honor. It held what it held, but it held it in a different context. So it's distinguishable. And the argument that the city is making is that there is no bright line. Now, you could look at it in the sense that a collateral attack does not automatically take away collateral estoppel. And maybe you're looking under the fairness and public policy aspect when you say, well, because it's on the same issue, then in this case, yes, it does wipe out that earlier ruling. However you want to phrase it, it does not, a later habeas that vacates a criminal conviction does not necessarily or automatically wipe out every underlying ruling. Could you address then the fairness, public policy exception? Address that. The fairness, public policy exception comes about most often in a situation where there really wasn't a fair hearing on the initial ruling. You were trying to apply collateral estoppel to something where it was a very perfunctory hearing. So you're saying that the fairness issue needs to be spotlighted on the issue before the court, that is the confession issue, rather than broadcast over the judgment itself. So when we ask is it fair or not, we don't ask is the conviction fair or not, but we ask whether this ruling in limine was fair or not. Well, the question is whether the application of collateral estoppel is fair. But, yes, in determining whether it is, I agree with you that you would focus on. So why is it fair for the Ninth Circuit to say that he's got a right, Mr. Hall's got a right to sue, but now we're not going to give him the evidence that he needs to prevail? You're referring to the prior panel's ruling? Yes. The prior panel had no knowledge, no evidence before it, as far as I'm aware. It didn't even know there had been a 402 hearing. So in just saying that it was going to reverse the denial of the motion to amend and allow the plaintiff to proceed with a Fifth Amendment cause of action, all the panel was saying was that he should be able to go back and bring his Fifth Amendment cause of action. This Court was certainly not holding that the city would be precluded from raising any applicable defenses such as collateral estoppel statute of limitations. This Court could possibly have held that it didn't know about them. Maybe not. I'm just stepping back from a broad point of view. It does, from fairness, if that's a really broad concept, it strikes me as a little odd to say you've got a cause of action, but then later find out that we're not going to let you bring the critical piece of evidence that could let you prevail on that cause of action. Again, when deciding to allow him to proceed with his Fifth Amendment cause of action, this Court was looking at only a piece of completely unrelated issues. If this Court ---- No, I understand. My question wasn't what the court of appeals said. I'm just going to the broad question of fairness, but because we only invoke collateral estoppel if it's fair, or at least stated the other way, we don't invoke it when it's not fair. Well, I don't think the question is whether it's fair in the sense of whether he can proceed with his cause of action. The question is whether or not it's fair to hold him to a ruling that was made after a full hearing, after complete consideration, and then it's been upheld on appeal. And that was what I was trying to address with you. Is the fairness question, does it go to the broad question of cause of action, or does it go to the narrow issue of the ruling of confession? That's what I was trying to address. Because it's issue preclusion and not claim preclusion. Exactly. And if the issue was fully and fairly litigated, then there's nothing unfair in saying you had your shot, and that's your one shot at that issue. And to the extent that the criminal case might have still been open at some point, it's clearly final now and not subject to appeal since the dismissal of the cause of action. And in terms of whether or not there could have been a retrial, consider a hypothetical situation where the prosecution chose to retry the case but not to use the confession. So the issue of the voluntariness of the confession was never brought up again, and if the defendant in that case had been acquitted, would he then be able to bring a civil suit raising the voluntariness of the confession, even though it had been found to be voluntary and that issue was never raised again in the subsequent retrial? That's an interesting hypo. I want to make sure I've got it right. Habeas is granted. They retry him. They don't even submit the confession. So whether the decision saying the confession was admissible or not, was right or wrong, is totally irrelevant now. And then what? Then he's acquitted and he brings his civil action. With the same claim that the original confession was. And you're saying that's really analogous to this case? No, I'm saying that's a hypothetical that would be, that's not, I mean, it's different than this case because obviously it was dismissed here. You're saying it's analogous in terms of. But it gives you the idea of if you follow the plaintiff's logic, that the habeas wiped out everything merely because if it had been retried, he could have raised the confession, the voluntariness of the confession at a retrial. That can't be the basis of whether or not collateral estoppel applies, because you're going to have some cases where that just doesn't happen. The part that you didn't state in your hypo is when he brings his 1983, after his acquittal in the trial where they didn't use the confession. His 1983 is, you beat a confession out of me. That his confession wasn't voluntary. But the response in that civil case then would be, but you weren't injured by it because we didn't use it at trial against you. A Fifth Amendment cause of action, and that actually goes into the statute of limitations issue that it doesn't appear we're going to be discussing today. A Fifth Amendment cause of action arises as soon as it's used. It doesn't have to be used at trial. It doesn't have to lead to a conviction. It merely has to be used in the criminal proceedings in some matter. So was the evidence here that it was used in order to get the indictment in the first place? It was used, right. It was presented to the district attorney. It was used in the filing of charges. It was used at the preliminary hearing. Okay. Would you briefly remind me of your statute of limitations argument? The argument is. It has to do with when it starts running, obviously. Correct. Heck versus Humphrey, as we all knew, basically said that when there is an existing criminal conviction and you want to raise a 1983 cause of action that would imply the invalidity of your conviction, that cause of action does not accrue until you've been exonerated. Wallace versus Cato then came out and said, whoa, wait a minute. That only applies if the cause of action accrues when there's an existing conviction, as would happen in most due process 14th Amendment causes of action, because those are part and parcel of a fair trial, and until you've been convicted after an unfair trial, Brady, for example, those causes of action haven't arisen. But under Wallace, a 4th Amendment cause of action, for example, false arrest or unlawful search, that accrues at the time that it happens because you haven't been convicted yet. Our argument is that the same analysis should apply to a 5th Amendment cause of action, because like a 4th Amendment cause of action, it accrues prior to conviction. It accrues in the absence of a conviction. It can accrue in the absence of a trial. So it makes no sense. So you're saying if somebody has a confession beaten out of them and eventually they decide not to prosecute the person at all, they still have their cause of action that accrues at the moment they were beaten up? Correct. I use that hypothetical. Well, at the moment that the confession is first used in the criminal proceedings, which could be the filing of charges, the preliminary hearing, a bail hearing. They could have a 1983 for the assault and battery, and they just wouldn't have getting wrongfully convicted as an element of their damages. Well, I don't believe there's a – I mean, suppose the police bring somebody down to the police station. They beat him up. He says, I'll say anything, just quit hitting me. And they tell him what to say, and he says it. And then they let him go home, forget about it, bring it to the prosecutor. He says, I'm not going to prosecute this. Well, there's no damages for going to jail because he didn't go to jail, no damages for getting a felony conviction so that he can't earn a living anymore because he didn't get a felony conviction. But he's still got damages from the assault and battery. He has an excessive force cause of action. He doesn't have a Fourth Amendment. Which is a Fourth Amendment. Which is a Fourth Amendment. He does not have a Fifth Amendment cause of action. But our argument is that whether it's a Fourth Amendment or a Fifth Amendment, because it – You're talking federal court. In federal court. Yeah. Whether it's a Fourth Amendment or a Fifth Amendment cause of action, because it accrues regardless of what happens down the line with a trial or conviction, under Wallace, it accrues immediately. So while Heck might require a stay of the case if it's brought after the conviction, it doesn't delay the accrual of the cause of action or the running of the statute of limitations. But what if his damages are the conviction? I mean, Heck says you can't say that I was wrongfully convicted until that conviction is overturned. So one of the elements of such a case is my damages is I was wrongfully convicted. So why wouldn't Heck say, well, until you've suffered that damage, prove that it was damaged by getting the conviction later reversed. Why wouldn't that trigger the running? Even though he might have had an earlier running for a different reason. Statute of limitations isn't determined by when your damages are finished. That's why if you're in a car accident – Not finished, but begun. I mean, if he says the only damages I'm claiming here is my wrongful conviction, that's the damage. I'm not alleging anything else. Heck would say, well, we don't know if it's wrongful or not until the conviction is overturned. If that made a difference, then you wouldn't have a clear rule as to when then a person could choose, oh, I missed the statute of limitations on my Fifth Amendment cause of action, so I'm going to wait until after I'm convicted and then claim only conviction damages? You would. In my case, since there were no charges preferred, it's pretty clear the statute started running when they beat him up. Nothing happened after that. But in Judge Ebell's case, something did happen after that, and you really couldn't tell whether it was right or wrong until the end of the story. But the statute of limitations begins to run. You may have to wait. No, it doesn't. You may not know the full extent of your damages. You have a car accident on Tuesday, but you feel fine, and then you develop medical problems on Saturday, and the doctor says Monday you've got serious medical problems caused by the accident. One element of the tort happened on Tuesday, the negligent collision. But another element of the tort, the damages, didn't happen until Saturday and weren't discovered until either Saturday or Monday. So you didn't have your negligence claim, and the statute didn't start running on it until Saturday or Monday. I disagree, Your Honor. I believe the statute of limitations, certainly under California law, is that it started to run at the time of the car accident. Well, you think the statute of limitations runs when you've got some but not all elements of the claim? You have damages the result of the car accident. The emotional distress, the damage to your car, there could be any number of things. Unless you're talking about a delayed discovery type of situation, you had surgery and it seemed to go fine, and it wasn't until two years later that you start to get symptoms of the fact that they left a sponge in you. That would have been a better heist. Yeah, that's a delayed discovery situation, because you have no reason to know a tort was committed. The reason the delayed discovery matters is that not all the elements of the tort were known at the earlier time when the physical acts occurred. You have no reason to know that you were harmed. That could be the same in the current case. You have no reason to know you were harmed until later than the statute of limitations might not start to run, whereas in the situation of a car accident, you know immediately that there was a tort. In the situation of where you get beaten up by the police and forced to confess, you know immediately, even if you may not think you have damages yet in some odd hypothetical, you know that the tort, you have the elements of the tort, you have the fact that something happened and you know that it happened. To allow the statute to be determined by how a plaintiff feels. If your claim is unfair criminal proceedings, how do you know they were unfair until you have a final judgment on whether they were? Well, if you're talking about a 14th Amendment claim of unfair trial. I'm actually now getting back to this case rather than hypothetical. Right. And there's a distinction. And the plaintiff, there was no claim that the plaintiff's 14th Amendment fabrication of evidence cause of action was beyond the statute of limitations. But that cause of action was basically decided against the plaintiff in two different summary judgment motions, both of which were upheld by this court. Now he has only his Fifth Amendment cause of action. And like a Fourth Amendment cause of action under Wallace v. Cato, the city's position is that a Fifth Amendment cause of action, because it doesn't require trial or conviction, also accrues at the time that the plaintiff knows all of the elements of his cause of action. Thank you, counsel. Your time has long expired. And since both of you went well beyond, you may have one minute for rebuttal. Thank you very much. First of all, on the statute of limitations questions, Jackson v. Barnes, which is in our reply brief and also in a Rule 28J letter, the Ninth Circuit has decided the question of when a Fifth Amendment claim accrues for purposes of 1983. And it says that it's governed by Heck, not by Wallace v. Cato, precisely for the reasons that Judge Ebell was talking about and Judge Kleinfeld were talking about. So that issue has been decided. Going back to the fairness of the proceeding, I would ask the Court to look at two different considerations. First of all, Smith v. ExxonMobil, which is a State case, they say, yes, fairness of the proceeding is one of the requirements for the technical requirements. And they say in that case it was satisfied. But they still say that overall it would not be fair to apply it in that circumstance because there was evidence unavailable to the fact finder. So the fact that it meets the technical requirements doesn't mean that you still can't say that it would not be fair. Give me that case site that you just noted. Smith v. ExxonMobil. Okay. Is that in your papers? It is. Okay. We'll find it. It is. It is. And the second point, I think, and this is the one that Judge Ebell made, is that it's also inconsistent with the policy of making sure there's a consistent decision between how the Court is going to proceed. And last time we were here, the Court said he should be able to proceed on a Fifth Amendment claim. And that's what the habeas granted him. And it would be inconsistent with that prior decision to now come out with another decision and say, guess what, you can't do that now. Thank you, counsel. The case just argued is submitted. We appreciate the arguments of both parties. And we'll take about a five-minute break or seven-minute break until the final case of the morning.
judges: Ebel, Kleinfeld, Graber